IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | | |
|---|---|---|
| JOSEPH TODD HAUBRICH, | ) | No. CV 05-117-GF-CSO |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| JIM MacDONALD, Warden, C.C.C.; MR. | ) | |
| LAW, Associate Warden, C.C.C.; MRS. | ) | |
| LAMEY, Unit Manager, C.C.C.; MS. | ) | |
| ELLINGTON, Unit Counselor, C.C.C.; | ) | |
| BILL SLAUGHTER, Director, | ) | |
| Department of Corrections; JOHN and | ) | |
| JANE DOES, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

On December 12, 2005, Plaintiff Joseph Haubrich filed this action under 42 U.S.C. § 1983.  Haubrich is a state prisoner proceeding pro se.  At the time he filed his Complaint, Haubrich moved to certify a class pursuant to Fed. R. Civ. P. 23(a).

On August 10, 2006, the Court issued an Order explaining certain deficiencies in Haubrich's Complaint and permitting him to file an Amended Complaint.  Haubrich did not respond to that Order.

## I. Haubrich's Allegations

Haubrich claims that the Defendants have violated his rights

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

to due process and adequate medical care and have imposed "mass punishment" in violation of the Federal Constitution.   His allegations are somewhat scattered throughout his pleading.   The Court has attempted to organize them more coherently.

Should his allegations be proven, Haubrich seeks a declaratory judgment, "appropriate injunctive relief to prevent further violations," compensatory and punitive damages, costs of suit and attorney fees, a provision for monetary sanctions to be imposed on violation of any stipulated agreement that the parties to this suit may make, and such other relief as may be appropriate.  See Compl. (Court's doc. 1) at 15-16, ¶¶ 1-7.

**A. Medical and Dental Care**

Haubrich alleges that he has been denied adequate medical and dental care for his broken teeth and for burns on his face.  He initially received ibuprofen to control the pain from his teeth and doxycycline for the burns, but in November 2005 those medications were taken away from him "for cost effective purposes."  He was told by a Mr. Underwood, who is not named as a defendant, that "if in a year you feel you need this medication, we will then review your file."  Compl. (Court's doc. 1) at 3-4, ¶¶ 8-13.

Haubrich also contends that his rights under the settlement agreement in Langford v. Racicot, CV 92-13-H-LBE (D. Mont. filed Jan. 28, 1992), have been violated.  He claims that "months" sometimes pass before a medical kite is answered and that he "goes

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 2

weeks or even months without being seen by a physician after being referred by C.C.C. nursing staff." He also alleges that allergy and cold medicine is not available from the canteen. See Compl. at 4-5, ¶¶ 14-15.

**B. Gift Subscriptions**

Haubrich claims that Defendants have no legitimate penological interest in denying him weekly or monthly subscription periodicals that have been ordered for him as gifts from friends or family with whom he is permitted to correspond. See Compl. at 5, ¶ 17.

**C. Correspondence**

Haubrich complains that Warden MacDonald does not permit him to exchange "privileged correspondence" with the Governor's Office or other State or Federal officials. See Compl. at 6, ¶ 18.

**D. Cold**

Haubrich asserts that his cell is insufficiently insulated and that he is not given enough blankets to stay warm in the winter. See Compl. at 6, ¶ 19.

**E. Mass Punishment**

Haubrich avers that "it has become common practice" for all 88 inmates in his unit, C-Pod, to be punished for the acts of a few by the imposition of lockdowns. He claims that the lockdowns are an attempt to compel inmates to "police their own," thus causing "those who inform" to be endangered as "snitches" and increasing the general level of animosity among inmates.

Haubrich complains of an eight-day lockdown beginning on April 27, 2005.  He asserts that the perpetrators of an attempted sexual assault in February 2005 and an assault in March 2005 – the two events that triggered the lockdown – were identified and sent to administrative segregation, where they received benefits that were denied to the inmates who remained in C-Pod: showers, recreation, day-room privileges, visitors, hot meals, telephone privileges, religious services, medical assessments, and access to legal resources.  He also complains that the amount of money inmates could spend at the canteen was reduced from $40.00 to $10.00 and that inmates did not receive food that met the nutritional standards set forth in the contract between Crossroads and the Montana Department of Corrections.

Haubrich alleges that other lockdowns began on May 13, July 21, and November 16, 2005, and lasted "days and weeks at a time." Elsewhere, he states that the July lockdown lasted for three days and that there were two lockdowns in November 2005, each of which lasted for five days.  He claims that he did not receive due process before the imposition of such punishment and that the lockdowns amount to cruel and unusual punishment in violation of the Eighth Amendment.  See generally Compl. at 6-10, ¶¶ 20-34; 13, ¶ 43.

## III. Analysis

Haubrich was given an opportunity to amend some of his claims

to cure deficiencies that prevent him from stating a claim. Because he did not respond to that order, several claims are appropriate for dismissal.  Some claims could not be amended to state a claim; those claims, too, should be dismissed.

One claim – the claim that Haubrich's cell is too cold in the winter – is sufficient to warrant service on Defendants MacDonald, Law, Lamey, and Ellington.  Service of that claim is directed by a separate Order.

## A. Standing

As to many of his claims, Haubrich does not allege facts sufficient to show that he has standing to pursue legal action against the Defendants.  A plaintiff may not pursue a general allegation against a defendant unless the plaintiff shows that he, *personally*, suffered some injury as a result of the defendant's conduct.  See, e.g., Farrakhan v. Washington, 338 F.3d 1009, 1022 & n.20 (9th Cir. 2003).  The injury in question must be an invasion of some right that belongs to Haubrich, and it must be "actual or imminent, not conjectural or hypothetical."  Id.

Haubrich does not allege the following:

- that he needed ibuprofen to control pain from his broken teeth in and beyond November 2005 and that he needed doxycycline at the same time for some specific reason involving the burns on his face;

- that he has waited for "months" after he has submitted a medical kite to be seen by someone in the infirmary;

- that he has waited for weeks or months to be seen by a

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 5

physician after being referred by nursing staff;

- that he has suffered from cold or allergy symptoms and been unable to obtain medication;

- that he received a gift subscription that he has not been permitted to receive;

- that he has attempted to send unprivileged letters to public officials or to receive letters from them and that he has been prevented from doing so;

- that he was prevented from attending religious services due to a lockdown;

- that he was harmed in any way by lack of access to recreation periods during lockdowns or, if so, for how long the harm continued;

- that he required and was denied a medical assessment during a lockdown;

- that he was unable to meet a filing deadline in court due to a lockdown and lost a cause of action as a result.

Haubrich was given an opportunity to establish his standing to pursue all of his claims. He was directed to provide *concrete, specific* information to show that he *personally* suffered some injury as a result of *each* of the actions of which he complains. The Court gave several examples of the sort of factual allegations that would suffice. <u>See</u> Order (Court's doc. 7) at 6-7. Nonetheless, Haubrich failed to respond.

Consequently, Haubrich's claims regarding medical and dental care, gift subscriptions, and correspondence, as well as his "lockdown" claims regarding access to religious services, recreation, medical assessment, and the courts should be dismissed.

**B. Lockdowns and Due Process**

There is no outright constitutional prohibition against "mass punishment" or "lockdown."  See, e.g., Pepperling v. Crist, 678 F.2d 787, 789 (9th Cir. 1982) (lockdown "*may* constitute a due process violation, as well as a violation of the Eighth Amendment, if [it] persist[s] too long.") (emphasis added); Hayward v. Procunier, 629 F.2d 599, 600-03 (9th Cir. 1980) (five-month lockdown did not violate Due Process Clause or Eighth Amendment).

The Court has not located any law suggesting that prison officials are required to forego all disciplinary or restrictive measures merely because they are able or unable to identify individual miscreants.  Courts must give prison officials wide latitude to define and deal with the intractable problems of prison administration.  The Supreme Court has explained the reason for this latitude:

> Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct. Inmates have necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint; they have shown an inability to regulate their conduct in a way that reflects either a respect for law or an appreciation of the rights of others.

Hudson v. Palmer, 468 U.S. 517, 526 (1984).  Thus, there is no constitutional infirmity in lockdowns per se.

Nor are prison officials required to give each inmate due process before imposing lockdowns.  To state a claim for a

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 7

violation of the Due Process Clause of the Fourteenth Amendment, a plaintiff must show (1) that he had a protected interest in life, liberty, or property, and (2) that he was deprived of that interest without adequate due process as set forth in Wolff v. McDonnell, 418 U.S. 539, 563-67, 570 (1974).  Haubrich was not deprived of his life or of any property.  His interest in liberty is the only interest potentially at stake here.  If there is no liberty interest at stake, no process is due, and the second element is irrelevant.  See Board of Regents v. Roth, 408 U.S. 564, 569 (1971); Erickson v. United States, 67 F.3d 858, 861 (9th Cir. 1995).

The United States Constitution does not create a liberty interest in inmates' ability to leave their cells for some period of time each day.  See, e.g., Hewitt v. Helms, 459 U.S. 460, 466-68 (1983); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (prison policy dictating that all inmates not working or attending classes must be confined to their cells during the day did not violate Due Process Clause).

Although Haubrich has no federally created liberty interest in remaining free of lockdown conditions, a liberty interest might arise from the provisions of state law.  In the prison setting, federal courts may recognize a state-created liberty interest if state officials or employees take actions that either (1) affect the sentence imposed upon conviction in an unexpected manner, or

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 8

(2) impose a hardship that is atypical and significant in relation

to the ordinary incidents of prison life.  See Sandin v. Conner,

515 U.S. 472, 483-84 (1995); Ramirez v. Galaza, 334 F.3d 850, 860

(9th Cir. 2003), cert. denied, 124 S. Ct. 2388 (2004).[1]

   The first source of protection does not apply in this case.

Haubrich's sentence has not changed.  While he might not have

expected that he might be affected by other inmates' wrongdoing,

the question is not whether anything unexpected occurred.  The only

question is whether the sentence was affected or altered in an

unexpected manner.  Since a reasonable person would know that the

actions of other inmates might affect the conditions under which he

lives in prison, Haubrich's sentence was not affected.

---

   [1]  Harris v. Maloughney, 827 F. Supp. 1488 (D. Mont. 1993),
was issued two years before Sandin.  Sandin rendered obsolete
Harris's discussion of inmates' possible liberty interests in
certain privileges, including VCR movies and matters concerning
meals, television, mail, and visitation.  Those interests were
deemed to have arisen, potentially, from disciplinary policies and
regulations.  See Harris, 827 F. Supp. at 1494 (citing Hewitt v.
Helms, 459 U.S. 460, 472, 473, 476 (1983)).  That manner of
analysis was disposed of by Sandin.  See Sandin, 515 U.S. at 474
("We granted certiorari to reexamine the circumstances under which
state prison regulations afford inmates a liberty interest
protected by the Due Process Clause."); see also id. at 481-84
(describing the problems resulting from the analysis of Hewitt and
explaining that state-created liberty interests "will be generally
limited to freedom from restraint which, while not exceeding the
sentence in such an unexpected manner as to give rise to protection
by the Due Process Clause of its own force, nonetheless imposes
atypical and significant hardship on the inmate in relation to the
ordinary incidents of prison life." (internal citations omitted)).
Harris does not address the plaintiffs' allegations under the
Eighth Amendment.

Nor does the second source of protection arise in this case. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." Sandin, 515 U.S. at 485. If the sanctions or consequences of a disciplinary violation are serious enough, and unusual enough, they may rise to the level of a violation of due process. That determination is highly dependent on the particular facts of the case. The courts consider three factors:

> (1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence.

Ramirez, 334 F.3d at 861 (internal quotations omitted) (quoting and citing Sandin, 515 U.S. at 486-87, and Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996), amended by 315 F.3d 1318 (9th Cir. 1998)).

The third factor obviously is not present here. Imposition of the lockdown had no effect at all on the ultimate duration of Haubrich's sentence.

The first and second factors also are not met. Confinement to a cell and deprivation of commissary, recreation, and visitation privileges for a period of eight days is not a harsh privation;

inmates in administrative segregation might expect such conditions

for longer periods of time.[2]   Many things might cause inmates to be

held for several days in the conditions imposed here: a winter

storm, a problem with the physical plant, an imminent but delayed

transfer.[3]   While it is not pleasant to be confined to a cell,

being so confined for the periods alleged in Haubrich's Complaint

is not atypical in relation to the ordinary incidents of prison

life.

_____

[2]   For example, in <u>Sandin</u>, the majority found that Inmate
Conner was not subjected to atypical or significant hardship in
relation to the ordinary incidents of prison life.  It compared the
eight hours' out-of-cell time that most inmates had with the 50-
minute period that Conner had for shower and exercise and found
those conditions to be similar.  Conner was held in disciplinary
segregation for thirty days.  During his 50-minute out-of-cell
periods, Conner "remained isolated from other inmates and was
constrained by leg irons and waist chains."  <u>See</u> <u>Sandin</u>, 515 U.S.
at 494 (Breyer, J., dissenting).  In other words, fifty minutes'
release and constant isolation from other inmates for a period of
thirty days was not atypical or significant in comparison to eight
hours' release and the companionship of a cellmate and others on
the block.  Therefore, C-Pod's inmates' confinement to their cells
for eight or nine days was not atypical or significant in
comparison to the more usual release into the day room.
     Haubrich complains that the inmates who were responsible for
the incidents that led to lockdown were held in better conditions
in segregation than he was in C-Pod.  <u>See</u> Compl. at 9, ¶ 30.
<u>Sandin</u> shows that conditions need not be equivalent to be
comparable.

[3]   That the lockdown was intended as punishment is not
relevant in this context.  Intent might matter in an Eighth
Amendment analysis, but not in a due process analysis.  <u>See, e.g.</u>,
<u>Resnick v. Hayes</u>, 213 F.3d 443, 444-45 (9th Cir. 2000) (amending
previous opinion, <u>see</u> 200 F.3d 641, 646, to delete distinction
between punitive and nonpunitive measures and employing a <u>Sandin</u>
analysis without regard to whether the challenged actions were
"administrative or disciplinary").

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 11

Based on the conditions and duration of the lockdowns, the Court concludes that Haubrich had no constitutionally cognizable liberty interest in remaining free of the lockdown conditions described in the Complaint.  Because he had no cognizable liberty interest, he was not entitled to due process before such conditions could be imposed on him.  He fails to state a claim for a due process violation.

## C. Safety

If the conditions under which inmates are compelled to live during lockdown are severe enough, their constitutional rights might be implicated.  See, e.g., Blake v. Hall, 668 F.2d 52, 56-57 (1st Cir. 1981) (where all inmates were subjected to unsanitary conditions because a few assaulted corrections officers who came on block to clean, Eighth Amendment was violated).

One condition that Haubrich appears to have standing to raise concerns his personal safety during lockdowns.  It is difficult to understand how inmates' safety is decreased by restricting contact with other inmates during a lockdown.  A general increase in tension in the pod is not sufficient to support a claim for violation of the Eighth Amendment.  Haubrich was given an opportunity to allege facts sufficient to support an inference that prison officials are deliberately indifferent to serious threats to inmates' safety during lockdowns.  See, e.g., Farmer v. Brennan, 511 U.S. 825, 834 (1994).  He did not respond.  His claims that

lockdowns are unconstitutional per se and his claim that his safety was imperilled due to lockdowns should be dismissed.

### D. Nutrition

Another lockdown-related claim that Haubrich might have standing to raise concerns the meals served to inmates during lockdowns. Although Haubrich asserts that inmates did not receive food that met the nutritional standards set forth in the contract between Crossroads and the Montana Department of Corrections, see Compl. at 7, ¶ 21, he does not allege that he did not receive food adequate to maintain his health or, more specifically, that he suffered any ill-effect due to the small amount or poor quality of food he received. Inmates are not constitutionally entitled to "tasty or aesthetically pleasing" food, nor does "the fact that the food occasionally contains foreign objects or sometimes is served cold" violate the Constitution. LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993). Serving sack meals during lockdowns, or providing cellmates with one hot meal and one sack lunch, does not begin to approach the gravity of a constitutional violation. Haubrich was given an opportunity to allege any additional facts that could support a claim that he was deprived of adequate nutrition during lockdowns. He failed to respond. This claim should be dismissed.

### E. Canteen

Inmates have no constitutional right to spend money at a

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 13

prison canteen or to obtain food or property other than the necessities of life, which must be provided by prison officials. Haubrich's allegation that spending restrictions have reduced the amount he may spend at the canteen from $40.00 to $10.00 should be dismissed.

### F. State Law Claims

To the extent Haubrich intends to assert claims under state law, including claims based on the contract between Crossroads and the Montana Department of Corrections, this Court should decline to exercise its supplemental jurisdiction.  Such claims are not well-developed in Montana law.  This Court is not aware of any decision by the Montana Supreme Court concerning the DOC's contract with private prison facilities or inmates' standing to raise claims based on the contract.  The development of Montana law is appropriately left the courts of the State of Montana.  See 28 U.S.C. § 1367(c)(1).

### G. Defendants

Haubrich names MacDonald and Law as Defendants because they are "responsible for the training and conduct of every employee." Compl. at 3, ¶ 4.  He names Slaughter because his "duty is to supervise, administer, direct, and execute the functions" of the Montana Department of Corrections.  Id.

A plaintiff does not state a claim against an individual defendant unless the plaintiff sets forth facts demonstrating how

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 14

*each* defendant *caused* or *personally participated in causing* a deprivation of his rights.  See, e.g., Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978); Stevenson v. Koskey, 877 F.2d 1435, 1438-39 (9th Cir. 1989).  The mere existence of an employment or supervisory relationship is not enough to make an individual liable for civil rights violations committed by others; in other words, there is no *respondeat superior*[4] liability under 42 U.S.C. § 1983. Monell v. New York Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Ortez v. Washington County, 88 F.3d 804, 809 (9th Cir. 1996).

Haubrich's only reason for naming MacDonald, Law, and Slaughter as Defendants is that they occupy supervisory positions. That is not enough to hold them to account for civil rights violations.  Since the Court has already recommended dismissal of the state law claims, there is no legal basis for retaining these Defendants in the lawsuit.  They should be dismissed.

## III. Motion to Certify a Class

Haubrich contends that a class action is appropriate because there are 88 persons in the area of the prison, C-Pod, where the lockdowns of which he complains have been implemented. Additionally, he asserts that the plaintiffs share common questions of law and fact, and that "the claim or defenses of the

---

[4]  The phrase means "let the superior make answer" or "look to the person higher up."  See Black's Law Dict. 1313 (7th ed. 1999).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 15

representative parties will fairly and adequately protect the interest of the class." Mot. for Class Designation (Court's doc. 3) at 1.

No inmate proceeding pro se may perform the functions of counsel in a class action. At the same time, it is not appropriate at this time to appoint counsel to represent Haubrich, for the reasons set forth in the Order of August 10, 2006. Consequently, the motion to certify a class should be denied.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1.  All of Haubrich's claims, except for the claim that his cell is too cold in the winter, <u>see</u> Compl. at 6, ¶ 19; 15, ¶ 49, should be DISMISSED WITH PREJUDICE.

2.   Defendants MacDonald, Law, and Slaughter should be DISMISSED.

3.  Haubrich's motion to certify a class action (Court's doc. 3) should be DENIED.

The Clerk of Court shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the Plaintiff. Plaintiff is advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed or delivered to

prison authorities for mailing within twenty (20) calendar days[5]

after the entry date reflected on the Notice of Electronic Filing,

or objection is waived.

Plaintiff must immediately inform the Court of any change in

his mailing address.

DATED this 1st day of September, 2006.


/s/ Carolyn S. Ostby
Carolyn S. Ostby
United States Magistrate Judge

---

[5]   In prisoner cases, this Court extends the time to object to
twenty days in order to take into account the Supreme Court's
ruling in Houston v. Lack, 487 U.S. 266, 270-71 (1988), and the
somewhat greater mailing time that is involved in sending documents
into and out of a prison facility.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 17